*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 04a0378p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

---

No. 04-4311

SUMMIT COUNTY DEMOCRATIC CENTRAL AND
EXECUTIVE COMMITTEE, et al.,
       *Plaintiffs-Appellees,*

v.

J. KENNETH BLACKWELL, et al.,
       *Defendants,*

MATTHEW HEIDER; SAM EWING; ELIZABETH COOMBE;
DAVID TIMMS,
       *Defendants-Intervenors-Appellants.*

Nos. 04-4311/4312

No. 04-4312

MARIAN SPENCER, et al.,
       *Plaintiffs-Appellees,*

v.

J. KENNETH BLACKWELL, et al.,
       *Defendants,*

CLARA PUGH; SAM MALONE; CHARLES WINBURN,
       *Defendants-Intervenors-Appellants.*

Appeal from the United States District Courts
for the Northern District of Ohio at Cleveland and the Southern District of Ohio at Cincinnati.
Nos. 04-02165; 04-00738—John R. Adams and Susan J. Dlott, District Judges.

Decided and Filed: November 2, 2004

Before: RYAN, COLE, and ROGERS, Circuit Judges.

    ROGERS, J., delivered the opinion of the court. RYAN, J. (p. 5), delivered a separate concurring opinion. COLE, J. (pp. 6-8), delivered a separate dissenting opinion.

1

---

## OPINION

---

ROGERS, Circuit Judge. The appeals in these cases have been consolidated. Both appeals involve Ohio Revised Code § 3505.20, which provides that "Any person offering to vote may be challenged at the polling place by any challenger, any elector then lawfully in the polling place, or by any judge or clerk of elections." Ohio Rev. Code Ann. § 3505.20 (Anderson 2004). The challengers referred to in § 3505.20 are provided for in § 3505.21, which provides:

> At any primary, special, or general election, any political party supporting candidates to be voted upon at such election and any group of five or more candidates may appoint to any of the polling places in the county or city one person, a qualified elector, who shall serve as challenger for such party or such candidates during the casting of the ballots, and one person, a qualified elector, who shall serve as witness during the counting of the ballots; provided that one such person may be appointed to serve as both challenger and witness.

Ohio Rev. Code Ann. § 3505.21 (Anderson 2004).

The first appeal, *Summit County Democratic Central and Executive Committee v. Blackwell*, # 04-4311, is an appeal from an order entered on October 31, 2004, by the Honorable John R. Adams of the United States District Court for the Northern District of Ohio, which granted a motion for a temporary restraining order, ordering that "persons appointed as challengers may not be present at the polling place for the sole purpose of challenging the qualifications of other voters" on November 2, 2004, the date of the Ohio general election. In that case, plaintiffs, the Summit County Democratic Central and Executive Committee and others, had filed a complaint on October 28, 2004, against J. Kenneth Blackwell, the Secretary of State of Ohio, members of the Summit County Board of Elections, unknown "challengers," and other unknown government officials pursuant to 42 U.S.C. § 1983. The complaint sought an order "prohibiting Defendants, while acting under color of state law, from depriving citizens of Ohio of their constitutional rights to due process and equal protection, through the application or enforcement of the so-called "challenge" procedures set forth in Ohio Rev. Code § 3505.20 . . . in the Ohio general election for local, state, and national offices on November 2, 2004, and thereafter." On October 31, 2004, the district court granted a motion to intervene filed by Matthew Heider, Sam Ewing, Elizabeth Coombe, and David Timms, challengers from the Ohio counties of Allen, Franklin, Summit, and Warren. The district court also granted a motion to intervene filed by the State of Ohio. On November 1, 2004, Defendants-Intervenors-Appellants Matthew Heider, Sam Ewing, Elizabeth Coombe, and David Timms filed a motion in this Court for an emergency stay of the district court's order, and also filed a notice of appeal.

The second appeal, *Spencer v. Blackwell*, No. 04-4312, is an appeal from an order entered on November 1, 2004, by the Honorable Susan J. Dlott of the United States District Court for the Southern District of Ohio, which granted a motion for injunctive relief, enjoining "all Defendants from allowing any challengers other than election judges and other electors into the polling places throughout the state of Ohio on Election Day." In that case, plaintiffs Marian and Donald Spencer had filed a complaint on October 27, 2004, against J. Kenneth Blackwell, the Secretary of State of Ohio, the Hamilton County Board of Elections, and the chair and members of that Board pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1973(a). The Amended Complaint in that action, filed on October 29, 2004, alleged that "African American voters . . . will face an imposing array of 'challengers' deployed to their precincts on Election Day. African American voters will be intimidated; racial tension will rise and African American voters will be blocked from exercising their right to vote." The district court found that

Nos. 04-4311/4312     *Summit County Democratic Central and*     Page 3
                    *Exec. Committee, et al. v. Blackwell, et al.*

> "[t]he evidence before the Court shows that in Tuesday's election, the polling places will be crowded with a bewildering array of participants—people attempting to vote, challengers (Republican, Democrat, and issue proponents or opponents), and precinct judges. In the absence of any statutory guidance whatsoever governing the procedures and limitations for challenging voters by challengers, and the questionable enforceability of the State's and County's policies regarding good faith challenges and ejection of disruptive challengers from the polls, there exists an enormous risk of chaos, delay, intimidation, and pandemonium inside the polls and in the lines out the door."

On November 1, 2004, Defendants-Intevenors-Appellants Clara Pugh, Sam Malone, and Charles Winburn filed a motion for an emergency stay of the district court's order, and filed a notice of appeal.

There is a significant question as to plaintiffs' standing. As the Supreme Court has held on many occasions, "the irreducible constitutional minimum of standing contains three elements," injury in fact, causation, and the likelihood that the injury will be redressed. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Standing in this case is a difficult issue, considering the nature of the alleged injuries. However, I assume without deciding that the plaintiffs have standing, given the short time in which we have to consider this issue, and the nonspeculative possibility that at least some actual injury will occur, in the form of greater delay and inconvenience in voting. To the extent that the lower court relied on additional "injury," such injury is speculative.

The next question is whether this court should grant Defendants-Intervenors-Appellants' motion for an emergency stay. The factors to be considered in determining whether an order should be stayed are the same factors considered in determining whether to issue a temporary restraining order of a preliminary injunction. *See Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrag*, 945 F.2d 150, 153(6th Cir. 1991). These factors are "(1) whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000).

Although it is possible that the plaintiffs will succeed on the merits, it is not likely. Neither district court relied upon racial discrimination as a basis for finding a likelihood of success on the merits. Instead, the courts below found a likelihood that the right to vote would be unconstitutionally burdened by having challengers present at the polling place, and that the presence of such challengers was not a sufficiently narrowly tailored way to accomplish legitimate government interests. Of course if we assume that the presence of challengers burdens the right to vote, it may certainly be argued that a more narrowly tailored approach is available. But the plaintiffs do not appear likely to succeed on the necessary primary finding that the presence of challengers burdens the right to vote. Challengers may only *initiate* an inquiry process by precinct judges, judges who are of the majority party of the precinct. The lower court orders do not rely on the likelihood of success of plaintiffs' challenges to the procedure that will be used by precinct judges once a challenge has been made. Longer lines may of course result from delays and confusion when one side in a political controversy employs a statutorily prescribed polling place procedure more vigorously than in previous elections. But such a possibility does not amount to the severe burden upon the right to vote that requires that the statutory authority for the procedure be declared unconstitutional.

The balance of harms in this case is close. If plaintiffs are correct in their view of the law, assuming they have standing because of the likelihood of significant delay, they will suffer irreparable harm. On the other hand, if the plaintiffs are not correct in their view of the law, the State will be irreparably injured in its ability to execute valid laws, which are presumed constitutional, for keeping ineligible voters from voting. In particular, the State's interest in not having its voting processes interfered with, assuming that such processes are legal and constitutional, is great. It is particularly harmful to such interests to have the rules changed at the last minute.

Nos. 04-4311/4312     *Summit County Democratic Central and*     Page 4
*Exec. Committee, et al. v. Blackwell, et al.*

       On balance, the public interest weighs against the granting of the preliminary injunction. There is a strong public interest in allowing every registered voter to vote freely. There is also a strong public interest in permitting legitimate statutory processes to operate to preclude voting by those who are not entitled to vote. Finally, there is a strong public interest in smooth and effective administration of the voting laws that militates against changing the rules in the hours immediately preceding the election.

       The above reasons support the GRANT of Defendants-Intervenors-Appellants' motions for emergency stays pending appeal.

Case: 5:04-cv-02165-JRA Doc #: 28 Filed: 11/02/04 5 of 8. PageID #: 207

Nos. 04-4311/4312   *Summit County Democratic Central and*   Page 5
                    *Exec. Committee, et al. v. Blackwell, et al.*

---

## CONCURRENCE

---

RYAN, Circuit Judge, concurring. I join Judge Rogers in granting the motion to expedite the appeal, consolidating the captioned cases, and staying the orders of the district court in each of the cases, which declared Ohio Rev. Code Ann. § 3505.20 unconstitutional and directed that persons appointed as challengers may not be present at the polling places in Ohio for the purpose of challenging the qualifications of voters. I do so, however, solely for the reason that, in my judgment, the plaintiffs have not shown the requisite standing to warrant the injunctive relief granted them by the district courts. By that, I mean that the plaintiffs have failed to demonstrate that they have suffered any "injury in fact" that is "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000).

The plaintiffs have pleaded and the district courts have found a possible chamber of horrors in voting places throughout the state of Ohio based on no evidence whatsoever, save unsubstantiated predictions and speculation. The statute allowing for the presence of challengers at the polling place has been on the books for decades. In neither of the cases before us have the plaintiffs shown that the intimidation, chaos, confusion, "pandemonium," and inordinate delay they allege will occur tomorrow is "actual or imminent [and] not conjectural or hypothetical." *Id.*

The statute authorizing the presence of challengers at the polling places is presumed to be constitutional. The plaintiffs have offered no evidence that the injury they allege will occur tomorrow, has ever occurred before in an Ohio election or that there has been any threat by the defendants or anyone else that such injury will occur. The "injury" the district courts found that the plaintiffs will suffer tomorrow is wholly speculative, conjectural, and hypothetical.

Quite aside from the presumption of the constitutionality of the statute authorizing the presence of the challengers at the polling places, the people of the State of Ohio are entitled to anticipate that tomorrow's election will be conducted in a lawful, orderly, and suitably expeditious fashion, to preserve every elector's right to vote. Should the inordinate delay and related horrors the plaintiffs posit become a reality tomorrow, the federal courts will be open to respond to proof-supported allegations of an unconstitutional burden on Ohio citizens' right to vote.

I agree that the temporary restraining orders issued by the district courts must be stayed.

---

**DISSENT**

---

R. GUY COLE, JR., Circuit Judge, dissenting. We have before us today a matter of historic proportions. In this appeal, partisan challengers, for the first time since the civil rights era, seek to target precincts that have a majority African-American population, and without any legal standards or restrictions, challenge the voter qualifications of people as they stand waiting to exercise their fundamental right to vote.

When the fundamental right to vote without intimidation or undue burden is pitted against the rights of those seeking to prevent voter fraud, we must err on the side of those exercising the franchise. In this case, we need not go so far as to balance these interests in a vacuum, however, because here, the rights of those seeking to prevent voter fraud are already well protected by the election protocols established by the state: at each polling place, there are election officials, election judges, and ordinary voters who can challenge potential voter fraud.

The movant in this case bears the burden to show why this Court should reverse the well-reasoned decisions by two district court judges, appointed by a Democrat and Republican President respectively. Each judge independently came to the conclusion that a Temporary Restraining Order ("TRO") against the Challengers was constitutionally required. The Republican Ohio Secretary of State, J. Kenneth Blackwell, has publicly stated that he wants all Challengers banned from the polls on election day. *Spencer v. Blackwell*, No. C-1-04-738, at 6 (S.D. Ohio Order of Oct. 27, 2004). Now, this Court steps in to overturn the district court, permitting Challengers to go to any polls they wish to target tomorrow. As troubling as the public policy ramifications from this decision are, the legal implications are equally astonishing.

Judge Ryan's concurrence asserts that plaintiffs lacked standing at the outset of this case.

In a case where no voter can know that it is he or she who will be injured, such a specific showing is not necessary for standing. *Sandusky County Democratic Party v. Blackwell*, Nos. 04-4265, 04-4266, 2004 WL 2384445, at *6 (6th Cir. Oct. 26, 2004). All that is needed is a showing that an injury is likely to occur to *some* group of voters. This potential injury, necessary for the purposes of standing, as well as for the merits of this case, was shown at the district court level.

The factors which this Court must consider in deciding whether to grant a preliminary injunction have all been met in this case. First, in addressing the chaos and intimidation that will flow from the presence of the partisan Challengers, Judge Rogers states that it is "questionable at best that such a possibility 'burdens' the right to vote." Op. of Rogers, J., at 6. However, such a conclusion simply ignores the applicable standard of review. It is well settled that an appellate court reviews a trial court's issuance of a TRO, preliminary injunction, or a stay of such injunctive relief pending appeal, for an abuse of discretion. *Socialist Workers Party v. Att'y Gen. of the United States*, 419 U.S. 1314, 1315 (1974) (noting that appellate review for "either a stay or the reversal of a preliminary injunction" is for an abuse of discretion); *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross and Blue Shield Assoc.*, 110 F.3d 318, 322 (6th Cir. 1997) ("This court reviews a challenge to the grant or denial of a preliminary injunction under an abuse of discretion standard and accords great deference to the decision of the district court."); *Haman v. J.C. Penney Co., Inc.*, Nos. 89-5329, 89-5458, 1990 WL 82720, at *6 (6th Cir. July 19, 1990) ("The standard of review that we must apply in reviewing such a stay order is one of abuse of discretion."); WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE § 2904 (2d ed. 2004) ("An application [for a stay of injunction pending appeal] necessarily goes to the discretion of the court."); *see also Seven-Up Co. v. O-So Grape Co.*, 179 F. Supp. 167, 172 (N.D. Ill. 1959) ("And judicial precedent is legion which suggest that the likelihood of successfully urging an abuse of discretion in an appellate court is comparable to the

Case: 5:04-cv-02165-JRA Doc #: 28 Filed: 11/02/04 7 of 8. PageID #: 209

Nos. 04-4311/4312   *Summit County Democratic Central and*   Page 7
                    *Exec. Committee, et al. v. Blackwell, et al.*

chance which an ice cube would have of retaining its obese proportions while floating in a pot of boiling water.").

Here, two separate district courts each heard testimony and reviewed evidence to support explicit factual findings that such a procedure may lead to suppression, intimidation, and chaos at the polls. *See Spencer v. Blackwell*, No. C-1-04-738, at 3-4, 7-8, 12-16 (S.D. Ohio Order of Oct. 27, 2004) (citing statements of election officials and other state officials, testimony of challengers evincing incomplete or confused understanding of proper Ohio election procedures, relevant statistics as to the racial population of the relevant Ohio counties, the lack of guidelines or directions regarding how to deal with challenges, and finding that all this will likely lead to voter intimidation); *Summit County Democratic Cent. and Exec. Comm. v. Blackwell*, No. 5:04CV2165, at 7, 9-14 (N.D. Ohio Order of October 31, 2004) (reaching similar conclusions). Nonetheless, without the benefit of reviewing any of this testimony or evidence, the lead opinion would reverse the decisions of two trial courts on the grounds that evidence establishes only a "questionable" burden. But our standard of review clearly indicates that in cases where the evidence is "questionable," we will defer to the reasoned discretion of the district court.

The burden on the right to vote is evident. In this case, we anticipate the arrival of hundreds of Republican lawyers to challenge voter registrations at the polls. Behind them will be hundreds of Democrat lawyers to challenge these Challengers' challenges. This is a recipe for confusion and chaos. Further, although the district courts did not render their decisions on Equal Protection grounds, Plaintiffs' evidence on this point is relevant to show the harm that will naturally ensue from the presence of the partisan Challengers. Numerous studies have documented the dramatic effect of poll watchers on African-American voters. *See, e.g.,* Complaint, *Spencer v. Blackwell*, No. C-1-04-738, at 9-10 (S.D. Ohio).[1] These studies are strong evidence of both an effect and a burden on the voting rights of *all* voters. "Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, *any alleged infringement* of the right of citizens to vote must be carefully and meticulously scrutinized." *Reynolds v. Sims*, 377 U.S. 533, 561-62 (1964) (emphasis added).

The Supreme Court's decision in *Burson v. Freeman*, 504 U.S. 191 (1992), is also instructive. In that case, the Supreme Court found that allowing vote solicitation near the polls would cause voter intimidation. *Id.* at 206. This case is similar. In fact, in this case, voter intimidation is likely to be even greater because the partisan operatives at the polls will be challenging the right to vote itself, rather than merely campaigning for a particular candidate or issue. There is no question that this poses a burden.

Second, the balance of harms is not at all close in this case. The magnitude of burden imposed on voters is great. Although the State of Ohio does have a compelling interest in preventing voter fraud, that interest is served by election officials, election judges, and other voters lawfully at the polling place. Ohio Rev. Code § 3505.20. The statute providing for additional Challengers at the poll is not narrowly tailored to serve this interest, and is not the least restrictive means for doing so. The harm caused by the chaos and uncertainty imposed by hundreds of additional Challengers at the poll far outweighs any minor decrease in voter fraud as a result of the Challengers' presence. The election judges and other voters perform the same

---

[1] For example, the Complaint notes:

> A study published in the 1981 Civil Rights Research Review, reported that in almost half the counties in Georgia, poll watchers intimidated or discriminated against prospective African American voters. A November 11, 1993 report by Associated Press reporter Jim Abrams quoted an anonymous Justice Department Official about post-1988 developments in Los Angeles: "All of these moves are called ballot security moves, moves by plain citizens to keep illegal voters from the polls, but none targeted illegal voters. They all targeted minority voters and specifically threatened them with some dire consequence[s] if there are problems with voter records."
>
> In a 1996 study, David Burnham reported that The Republican National Committee and the New Jersey Republican State Committee engaged in a "concerted effort to threaten and harass black and Hispanic voters" via a "ballot security" effort.

Case: 5:04-cv-02165-JRA Doc #: 28 Filed: 11/02/04 8 of 8. PageID #: 210

Nos. 04-4311/4312 *Summit County Democratic Central and* Page 8
*Exec. Committee, et al. v. Blackwell, et al.*

function as these Challengers. The potential harm to the defendants is protected by the political officials at the polls. The potential harm to the plaintiffs, in contrast, is not addressed. The balance of harms, therefore, weighs strongly in favor of denying the motion to stay.

Third, the public interest weighs in favor of allowing registered voters to vote freely. The freedom to vote is best served by allowing election officials, election judges, and citizens to protect against voter fraud. Permitting hundreds of election Challengers to challenge voters at particular polls will promote chaos and uncertainty; it will divert the attention of election judges; and most importantly, it will create a level of voter frustration that could deter citizens from exercising their constitutional right to vote. There is no great justification for this infringement since the interests of the Challengers will be served by other parties. Election Judges represent both parties, with no one party having more than 50% of the judges. Ohio Rev. Code § 3501.22. This requirement alleviates any fear that the appellants have in this case. There is no reason to believe that these election judges, many of whom are members of the same party that insists on sending more lawyers to the polls, will fail to detect voter fraud, especially when it is their job to do so.

The majority indicates that the procedures for partisan political operatives to challenge an Ohio citizen's right to vote will not result in voter suppression, intimidation, or chaos at the polls. I deeply and sincerely hope they are right.

However, as voting is the very foundation of this Republic, our Constitution requires more than mere hope. Rather, the citizens of Ohio have the right to vote without the threat of suppression, intimidation, or chaos sown by partisan political operatives. I therefore dissent.